IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| WILLIAM DUN, Individually and as the PERSONAL REPRESENTATIVE OF THE ESTATE OF IRMADEL DUN, IRENE DUN, SHERYL DUN, PAT RUGGIERI, and DORA MENGEL, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRANSAMERICA PREMIER LIFE INSURANCE COMPANY, F/K/A MONUMENTAL LIFE INSURANCE COMPANY, F/K/A PEOPLES BENEFIT LIFE INSURANCE COMPANY, FINANCIAL PLANNING SERVICES, INC., BUENA SOMBRA INSURANCE AGENCY, INC., AMPAC INSURANCE AGENCY, INC., AEGON DIRECT MARKETING SERVICES, INC., and DOES V – XI,<br><br>Defendants, | CV-16-23-BU-BMM<br><br>ORDER |

The Court addresses two motions. Plaintiffs William Dun ("Dun"), individually and as personal representative for Irmadel Dun, Irene Dun, Sheryl Dun, Pat Ruggieri, Dora Mengel, and all others similarly situated, move the Court to transfer this case to the U.S. District Court for the District of Columbia. (Doc.

1

58). Defendants Financial Planning Services, Inc. ("FPS") and Aegon Direct Marketing Services, Inc. ("ADMS") ask the Court to dismiss FPS and ADMS as parties based upon the Court's alleged lack of personal jurisdiction. (Doc. 62).

## BACKGROUND

This matter began as a denial of insurance benefit claim when Dun filed an action against Transamerica Premier Insurance Inc. ("Transamerica") in the Eighteenth Judicial District Court, Gallatin County, Montana. (Doc. 1 at 2). Irmadel Dun had purchased a life insurance policy in response to a solicitation that she had received in the mail at her home in Montana. *Id.* Transamerica properly removed the case to the Montana District Court's Butte Division by means of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. *Id.*

Initial discovery unearthed new information regarding the insurance policy purchased by Irmadel Dun. (Doc. 21 at 2). Dun discovered that the insurance policy purchased by Irmadel Dun had been placed in a Trust with its situs in Washington D.C. (Doc. 59 at 4-5). Dun amended his Complaint twice to reflect the new information.

Dun added two potentially liable parties involved in the dissemination of the insurance policy attached to the Trust – ADMS and FPS. (Docs. 21, 28). Transamerica currently serves as Trustor of the Trust, ADMS serves as the Administrator of the Trust, FPS serves as the Trustee, and the insureds serve as the

beneficiaries of the Trust. (Doc. 59 at 3-6). Dun lacked knowledge of the existence of the Trust and the roles played by ADMS, and FPS before he filed his original complaint. *Id.* at 2.

## DISCUSSION

### I. Transfer

"For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district court or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The trial court typically determines the question of personal jurisdiction in advance of venue. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). Personal jurisdiction reflects the court's power to exercise control over the parties. *Id.* A court may reverse the normal order of considering personal jurisdiction and venue when there exists a "sound prudential justification for doing so . . .." *Id.*

The party seeking transfer bears the burden of demonstrating that the transferee district provides a more appropriate forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). Courts possess broad discretion to transfer cases. *Id.* at 498. A court must consider, however, the factors of convenience and fairness to the parties in choosing whether to exercise this discretion. *Id.*

3

A district court's consideration of a transfer pursuant to § 1404(a) typically involves two steps. A district court first must decide whether the action originally could have been brought in the proposed transferee districts. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). If the answer is yes, then the district court must make an individualized, case-specific, analysis of convenience and fairness to the parties and witnesses, and an assessment of the interests of justice. *See Jones*, 211 F.3d at 498-99. This assessment incorporates multiple factors. These factors include the following items: (1) the location where the parties negotiated and executed the relevant agreements; (2) the forum most familiar with the governing law; (3) the plaintiffs' choice of forum; (4) contacts of the different parties with the forum; (5) local interest in the controversy; (6) the ease of access to sources of proof and evidence; and (7) relative congestion in each forum. *Id.*

### A. Personal Jurisdiction

Federal courts follow state law in determining the bounds of jurisdiction over a party. Fed. R. Civ. P. 4(k)(1)(A). Montana's long-arm statute provides that "[a]ny person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of . . . the transaction of any type of business within this state . . . contracting to insure any person, property or risk located within this state at the time of contracting." Mont. R. Civ. P. 4(b)(1)(A), (D). The Court must comport with the

limits imposed by federal due process when determining personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

The U.S. Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), determined that a state may exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts such that the maintenance of the suit does not offend "traditional notions of fair play." *International Shoe*'s "conception of fair play and substantial justice presaged the development of two categories of personal jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

General jurisdiction proves proper where a foreign corporation's operations within a state are sufficiently substantial, continuous and systematic that it justifies a suit against it on causes arising from those activities. *International Shoe*, 326 U.S. at 318. Specific jurisdiction exists from in-state activities giving rise to the liabilities sued on and proves proper with respect to suits relating to some single or occasional act within the state. *Id.*; *Daimler AG*, 571 U.S. at 126.

The Court employs a three-part test to determine whether the defendant's contacts with the forum-state suffice for specific jurisdiction. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990). Specific jurisdiction exists if: (1) the defendant does some act which purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim arises

from the defendant's forum-related activities, and; (3) the exercise of jurisdiction is reasonable. *Id.*

Defendants ADMS and FPS meet all three elements required for the Court to exercise specific personal jurisdiction. FPS and ADMS hold significant responsibilities with the Trust that directly solicited Irmadel Dun in Montana. Dun's claim for relief stems directly from the insurance policy held by the Trust. It is reasonable for the Trustee and the Administrator of the Trust to foresee being haled into a court where the Trustor, Transamerica, directly solicited the insured to purchase the policy.

The Ninth Circuit in *Farmers Ins. Exch.* evaluated whether Portage La Prairie Mutual Insurance ("Portage") had availed itself to the Montana forum. *Id.* at 913. Farmers Insurance ("Farmers") argued that Portage purposefully had availed itself to the forum by having issued a policy that extended into Montana. *Id.* The Ninth Circuit agreed. Portage satisfied the purposeful availment requirement when Portage offered insurance in Montana. The act of offering insurance in the forum state left little doubt that the insurer could foresee being haled into court in that forum state. *Id.* at 914.

Transamerica, ADMS, and FPS act in concert for the Trust that produced and solicited an insurance policy within the exterior boundaries of Montana. (Docs. 28, 31, 40, 41 at ¶ 6). Transamerica serves as the Trustor of the Trust.

6

(Doc. 59 at 40).  FPS has served as Trustee for the Trust since the Trust's inception in 1982.  *Id.* at 20.  ADMS serves as the Administrator of the Trust.  (Doc. 40 at 5). The Trustee holds the group insurance policy at issue.  (Doc. 59 at 4, 23).  Irmadel Dun received direct mail solicitation in Montana for the insurance policy.  (Doc. 69 at 18).  Similar to *Farmers Ins. Exch.*, by soliciting citizens within the District of Montana little doubt exists that Transamerica as Trustor, FPS as Trustee, and ADMS as Administrator of the policy could foresee being haled into a Montana court related to an issue with the insurance policy that Transamerica solicited in Montana.

This Court's ability to exercise jurisdiction over Transamerica remains undisputed.  (Doc 76 at ¶1).  ADMS and FPS contend that they lack the requisite minimum contacts with Montana to prove sufficient to support the Court's exercise of specific jurisdiction.  (Doc 62).  ADMS and FPS claim they have not engaged in any activity in Montana.  ADMS and FPS claim that they did not conduct any business in Montana.  ADMS and FPS claim that they did not commit any act in Montana that would provide the basis for a tort claim.  ADMS and FPS further contend that they do not own or possess property in Montana, did not contract to insure anyone in Montana, and did not act as a trustee of a corporation in Montana. *Id.*  Both parties further allege that they played no role in the development,

7

marketing, sale, or claims associated with the insurance policy issued to Irmadel Dun. *Id.*

The Court agrees that ADMS may have played no direct role with the insurance policy at issue. Transamerica issued the policy to Irmadel Dun in 2001 and ADMS did not become Administrator of the Trust until 2007. (Doc. 59 at 4). ADMS fails to acknowledge, however, that it assumed "all liabilities [of ADMS's predecessors] arising directly from their service as prior Administrators of the Trust" when Bueana Sombra, ADMS's predecessor, merged into ADMS. (Doc. 59 at 57). ADMS accepted liability for all actions taken by its predecessors, including the development, approval, and dissemination of the insurance policy to Irmadel Dun in 2001.

The Agreement and Declaration of the Trust further demonstrates that the Administrator holds significant duties that support the Court's exercise of specific jurisdiction over ADMS. ADMS, as the Administrator, determines the requirements with which a person must comply in order to be eligible for benefits provided by insurance policies in the Trust. (Doc 59 at 27). ADMS, as the Administrator, holds a veto power that prohibits the Trustee from contracting with any insurance company or "Trustor" without the Administrator's approval. (Doc. 59 at 29). The Administrator may change, terminate or replace a policy at any time if deemed to be in the best interests of the Trust. (Doc. 59 at 27). Indeed, the

caliber of involvement that the Administrator exercises through the Trust's Agreement and Declaration undermines any claim that an Administrator of the Trust would doubt that an insured, like Irmadel Dun, would hale it into a court in a forum where the insurance policy had been solicited and purchased.

FPS similarly availed itself to this Court's jurisdiction. The Agreement and Declaration of the Trust requires FPS to apply to an insurer for the issuance of a policy or policies. (Doc. 59 at 23-24). In fact, FPS acts as the owner of the group policy at issue here. FPS, as the Trustee, serves as the policy holder for any insurance plan. (Doc. 59 at 4, 23). The Trustee remains fully protected and will face no liability while acting in accordance with the Administrator's instructions. (Doc. 59 at 24). The Administrator will indemnify the Trustee for any claims and actions against the Trustee. (Doc. 59 at 23-24).

FPS, unlike ADMS, has been associated with the group policy at issue since its inception in 1982. FPS has served as Trustee of the Trust since that date. As a result, FPS served as the Trustee who applied to Transamerica, or its predecessor, for the group policy at issue here. FPS, as Trustee, should have understood that Transamerica would solicit customers across the country, including in Montana, to purchase the group policy at issue. The Agreement and Declaration of the Trust further demonstrate that the Trustee must assume that a claim or action may be raised against it and would require FPS, as Trustee, to be haled into court in any of

9

the forums where Transamerica had solicited customers to purchase the insurance policy. Like in *Farmers Ins. Exch.*, little doubt exists that the Trustee could not foresee being haled into court in the forum where Transamerica had solicited Irmadel Dun and where she had purchased the group insurance policy that FPS now holds.

**B. Where the Action Could Have Been Brought**

The Court next must evaluate whether this action might have been brought in the District of Columbia. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). The venue statute provides that a civil action may be brought in a judicial district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391. The phrase "where it might have been brought" relates to the time of bringing the action, and if at that time "the transferee forum [had] the power to adjudicate the issues of the action, it is a forum in which the action might have been brought." *Hoffman v. Blaski*, 363 U.S. 335, 342 (1960).

Defendants argue that Dun could not have brought this action in the District of Columbia. (Doc. 69 at 26). Defendants allege that Dun's original Complaint simply asserted that Transamerica improperly had denied insurance benefits owed in Montana that had nothing to do with the District of Columbia. *Id.* Defendants further allege that these claims in Dun's original Complaint completely

10

encompassed the scope of "the situation which existed when the suit was filed" under a § 1404(a) transfer analysis. *Id.*

The Supreme Court's decision in *Hoffman*, 363 U.S. at 342, sets forth what a court may consider when determining "the situation which existed when the suit was filed." Plaintiffs, all Illinois residents, brought a patent infringement action in a federal district court in Texas against a Texas resident and a corporation amenable to suit only in Texas. *Id.* at 336. Defendants initially answered the complaint in Texas. Defendants then sought to transfer the action to a federal district court in Illinois. In so doing, Defendants agreed to waive all objections to improper venue and lack of personal jurisdiction by the court in Illinois. *Id.* at 336 & n. 2.

The Supreme Court reversed the transfer of the action from Texas to Illinois. Plaintiffs sought to expand the scope of "where the action may have been brought" under the 28 U.S.C. § 1404(a) analysis. *Id.* at 342. Plaintiffs argued that the phrase "the situations which existed when the suit was filed" should relate not only to the time of the bringing the action, but also should relate to the situation at the time of transfer. *Id.* The Supreme Court disagreed.

The Supreme Court rejected the effort to transfer the case to Illinois because, at the time the action was brought, the action was not one that could have been brought in Illinois. *Id.* at 343. The Supreme Court refused to interpret the phrase

11

"where it might have been brought" to mean "where [the action] may *now* be brought." *Id.* (emphasis added). The Supreme Court explained that to expand the scope in this way would conflict directly with the purpose of a § 1404(a) transfer. *Id.*

The Supreme Court further explained that it "do[es] not see how the *conduct* of a [party] after a suit has been instituted can add to the forums where 'it might have been brought.'" *Id.* (emphasis added). The conduct of a party after the filing of a complaint has no bearing on the proper forum. The meaning of this phrase "might have been brought" simply directs the presiding judge to consider the "situation which existed when [the] suit was instituted." *Id.* The Supreme Court expressly rejected the proposition that the defendants' subsequent waiver of improper venue and lack of personal jurisdiction cured this defect: The power of a District Court under § 1404(a) to transfer an action to another district "is made to depend not upon the wish or waiver of the defendant" but, rather, upon whether the transferee district was one in which the action "might have been brought" by the plaintiff. *Id.* at 343-344; *see also Great-West Annuity & Life Ins. Co. v. Woldemicael*, 2006 WL 1638497 (W.D. Wash. 2006).

The "situation which existed when this suit was instituted" guides the Court to the conclusion that this action could have been brought in the District of Columbia. Defendants attempt to narrow the "situation which existed at the time

12

this suit was instituted" to the allegations contained in the four corners of Dun's original Complaint. (Doc. 69 at 26). The situation that existed, however, encompassed much more than Dun understood at the time of the filing of his original Complaint. Dun had no knowledge of the existence of the Trust or the existence of FPS and ADMS at the time that he filed his original Complaint. It appears that Dun had no ability to uncover these facts without first filing the original action against Transamerica and then engaging in the discovery process. (Doc. 21 at 2).

Dun's understandable lack of knowledge regarding the existence of the Trust, FPS, or ADMS had no effect on the "situation which existed at the time this suit was instituted." Unbeknownst to Dun, the Trust existed, FPS served as the Trustee of the Trust, and ADMS served as the Administrator of the Trust. This situation existed at the time that Dun filed suit. The Trust has existed since 1982. (Doc. 59 at 20). FPS has served as Trustee since the Trust's inception. *Id.* ADMS has served as Administrator of the Trust since 2007. (Doc. 40 at 5). No conduct by Dun, the Trust, FPS, or ADMS since Dun's filing of the original Complaint has changed "the reality of the situation that existed." The mere fact that Dun properly added the Trust, FPS, and ADMS by amending his original Complaint in no way alters the situation which existed when Dun filed his original Complaint.

Defendants further allege that the Court cannot transfer this action based on the District Court of the District of Columbia's inability to exercise personal jurisdiction over Transamerica and ADMS. (Doc. 69 at 28). Transamerica is an Iowa corporation with its principal place of business in Iowa. *Id.* at 27. ADMS is a Maryland corporation with its principal place of business in Maryland. (Doc. 63 at 12). The District of Columbia's long-arm statute provides that the District of Columbia may exercise personal jurisdiction over a party that transacts any business in the District of Columbia, any party that possesses an interest in real property in the District of Columbia, or any party that contracts to insure any person or has an obligation to be performed within the District of Columbia. D.C. Code § 13-423(a)(1), (5)-(6).

The Trust's situs is in the District of Columbia and operates its business in the District of Columbia. The Trust directs that D.C. law govern a dispute with the Trust. (Doc. 69; Ex. A, at ¶ 9.1). Transamerica serves as Trustor of the Trust. ADMS serves as the Administrator. Both the Trustor and Administrator possess extensive authorities and responsibilities to be performed with the Trust's situs in the District of Columbia. The enumerated responsibilities contained in the Agreement and Declaration of Trust guide the actions of the Trustee and the Administrator of the Trust. These responsibilities highlight the possibility that the Trustor and the Administrator of the Trust would be involved in any legal action

14

involving the Trust and would be haled into court in the District of Columbia.  The District of Columbia possesses the authority to exercise specific personal jurisdiction over both Transamerica, as the Trustor, and ADMS, as the Administrator of the Trust.

### C.  Convenience, Fairness, and Interests of Justice

In determining whether transfer is appropriate the Court must weigh multiple factors.  The Court may, and has already, considered "the respective parties' contacts with the forum," as well as, "the contacts relating to the plaintiff's cause of action in the chosen forum."  *Jones*, 211 F.3d at 498.

The Court may consider "location where the relevant agreements were negotiated and executed."  *Id*.  The Trust's situs is in the District of Columbia and the master policy was delivered in the District of Columbia.  (Doc. 69; Ex. A at ¶ 9.1).  FPS, an entity incorporated in the District of Columbia, applied to Transamerica for the issuance of the group insurance product at issue in this case.  (Doc. 59 at 5).  Transamerica applied to the insurance commissioner in the District of Columbia for approval of the policy.  *Id.*  It is evident from these facts that the parties negotiated and executed many relevant agreements in the District of Columbia.

Another factor the Court may consider is "the state that is most familiar with the governing law."  *Jones*, 211 F.3d at 498.  The Trust's Agreement and

15

Declaration itself states that "all questions pertaining to [the Trust's] construction and administration shall be determined in accordance with the laws of the District of Columbia." (Doc. 69; Ex. A at ¶ 9.1). Additionally, "the ease of access to sources of proof" supports transfer to the District of Columbia as the Trust's situs is the District of Columbia and it is operated through the District of Columbia. *Jones*, 211 F.3d at 498. Weighing all the factors considered, the Court determines that transferring this matter to the District of Columbia proves most efficient and serves the interests of justice.

## **ORDER**

Accordingly, IT IS ORDERED that Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 62) is DENIED. IT IS FURTHER ORDERED that Plaintiffs' motion to transfer this matter to the Federal District Court of the District of Columbia (Doc. 58) is GRANTED.

DATED this 2nd day of January, 2019.

Brian Morris
United States District Court Judge